IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PATRICIA TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:19-CV-774-KFP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Patricia Turner filed a Title II application for a period of disability and disability insurance benefits on September 27, 2016, alleging disability beginning on April 17, 2016. R. 222. The claim was denied at the initial administrative level on December 19, 2016. R. 167. Plaintiff then filed a written request for hearing before an Administrative Law Judge on January 3, 2017. R. 173. A hearing was held on June 4, 2018. R. 114. Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on October 17, 2019. R. 1–7. The ALJ's decision consequently became the final decision of the Commissioner of Social Security. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). This case is now before the Court for judicial review of that decision under 42 U.S.C. § 405(g). After careful scrutiny of the

---

[1] Kilolo Kijakazi is now the Acting Commission of Social Security and is automatically substituted as a party under Rule 25(d) of the Federal Rules of Civil Procedure. *See also* 42 U.S.C. § 405(g) (providing that an action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

record and the parties' briefs, the Court AFFIRMS the Commissioner's decision for the reasons set forth below.

## I.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla— the evidence must do more than merely create a suspicion of the existence of a fact and must include relevant evidence that a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester*, 792 F.2d at 131). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law or if the decision fails to provide the Court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

## II.    STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general Disability Insurance Benefits ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based on proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C). However, despite the fact that they are separate programs,

the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986).

Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to do the following:

> [E]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine if a claimant is entitled to benefits:

(1)     Is the person currently unemployed?
(2)     Is the person's impairment(s) severe?
(3)     Does the person's impairment(s) meet or equal one of the specific impairments set forth in Listing of Impairments in Appendix I of 20 C.F.R. Pt. 404, Subpt. P?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen*, a (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920 (2010). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. A negative answer to any question except Step Three leads to a determination of "not disabled." *McDaniel*, 800 F.2d at 1030; 20 C.F.R. § 416.920(a)–(f).

The claimant carries the burden of proof through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet their burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To complete Steps 4 and 5, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and non-exertional limitations. *Id.* at 1242–43. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily required finding of "disabled" or "not disabled." *Id.*

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 46 years old at the time of the ALJ's decision. R. 225. She lives in Ozark, Alabama, with her 27-year-old daughter and is unmarried. R. 118. She completed eighth grade, but she had no further schooling. R. 241. She claims she has been unable to work since April 17, 2016, due to multiple conditions, including vitamin B1 deficiency, ataxia, sleep apnea, dizziness, and chronic fatigue. R. 240. Plaintiff previously worked as a mental health aide, home health aide, retail sales clerk, and stock clerk. R. 142–43, 241.

Following an administrative hearing and employing the five-step process, the ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since April 17, 2016, the alleged onset date. R. 98. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. § 416.920(c): degenerative disc disease, fibromyalgia, central sensitization syndrome, Sjogren's syndrome, and obesity. R. 98. At Step Three, the ALJ determined that none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of an impairment listed in the applicable regulations. R. 100. The ALJ then articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: never climbing ladders, ropes, scaffolds; occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, crawling; frequently pushing, pulling, reaching, handling, fingering, and feeling; occasional exposure to extreme cold, wetness, humidity, dust, fumes, odors, and gases; no exposure to unprotected heights, hazardous machinery or vibration.

R. 100–101. The ALJ stated that she considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on 20 C.F.R. 404.1529 and SSR 16-3p. R. 101. The ALJ stated that she also considered opinion evidence in accordance with 20 C.F.R. 404.1527. R. 101. At Step Four, having consulted with a VE, the ALJ concluded that Plaintiff has engaged in past relevant work as a retail salesclerk and that Plaintiff is capable of performing this past relevant work as actually or generally performed. R. 104. At Step Five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ also found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 105. Based upon the VE's testimony, the ALJ determined that Plaintiff could perform the jobs of production assembler, cafeteria attendant, and garment bagger. R. 105. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability . . . from April 17, 2016, through the date of this decision" and denied her claim. R. 93, 105.

## IV.    DISCUSSION

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to properly develop the record pursuant to 20 C.F.R. § 404.1512; (2) whether the ALJ failed to identify or resolve an apparent conflict between the VE's testimony and the manipulative demands of a retail sales clerk; (3) whether the ALJ applied an incorrect standard of law in evaluating Plaintiff's conditions at Step 2; and (4) whether the ALJ erred as a matter of law when she failed to properly evaluate Plaintiff's testimony of pain or other subjective symptoms in light of her severe fibromyalgia and central sensitization syndrome. Doc. 17 at 1.

## A.      The ALJ's Development of the Record

Plaintiff's first argument on appeal is that the ALJ erred by failing to properly develop the record pursuant to 20 C.F.R. § 404.1512. Citing 20 C.F.R. § 404.1512(b), Plaintiff argues that the ALJ has a duty to develop the complete medical history of a claimant from at least twelve months prior to the filing of an application. Doc. 17 at 8. Plaintiff asserts that the ALJ committed legal error by failing to obtain all of Plaintiff's medical records "from at least the period of September 28, 2015 through September 28, 2016."[2] *Id.* Specifically, Plaintiff points to the absence of records regarding Plaintiff's treatment by Dr. Gregory Gibson of the Southern Clinic from January 2016 through August 2016, and Plaintiff contends this absence prevented the ALJ from considering the full record. *Id.*

"Social Security proceedings are inquisitorial rather than adversarial," and the ALJ has a duty to "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–111 (2000) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). In this investigation, the ALJ has a basic duty to develop a full and fair record. *Ellison*, 355 F.3d at 1276. This basic duty exists even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276.

---

[2] It appears that Plaintiff filed her application on September 27, 2016, rather than September 28, 2016. *See* R. 222. However, the precise filing date is inconsequential to the Court's analysis and decision.

Necessity for remand is determined by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam) (internal quotations omitted). There must be a showing of clear prejudice before a case will be remanded to the ALJ for further development of the record. *Id.* Plaintiff bears the burden of demonstrating clear prejudice. *See Huffman v. Colvin*, 2013 WL 1282311, at *4 (N.D. Ala. Mar. 21, 2013) ("Not only is the ultimate evidentiary burden placed on Plaintiff, but Plaintiff must also make a 'clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded.'"). Where clear prejudice is not present, the failure of an ALJ to develop the record amounts to harmless error. *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 932 (11th Cir. 2015).

Plaintiff correctly notes that this case is distinguishable from the likes of *Ellison*, 355 F.3d 1272, 1276; *Cowart*, 662 F.2d 731, 735; *Graham*, 129 F.3d 1420, 1423; and *Brown*, 44 F.3d 931, 935, as the current issue does not involve medical records outside the twelve-month window, third party testimony, or Plaintiff's representation. Doc. 22 at 2. The absent records fall within the relevant twelve-month period before Plaintiff filed her application on September 27, 2016 (R. 225), and Plaintiff was represented by a non-attorney at the time of hearing (R. 166). Moreover, Plaintiff notified the ALJ that she was treated by Dr. Gibson at the Southern Clinic. R. 242. The transcript contained pharmacy records confirming Dr. Gibson's prescription of medication for Plaintiff, records listing Dr. Gibson as Plaintiff's primary care physician, and evidence that the Southern Clinic records were requested and "received" on November 17, 2016. R. 295, 304, 250. Despite this, the

Southern Clinic records remain absent from the transcript even after the Commissioner filed the Supplemental Record.

However, even if the Court were to assume this absence amounts to a failure of the ALJ's duty to develop the record, whether the error requires remand is another question. This case is similar to *Bellew*, cited above, because the absence of the Southern Clinic records amounts, at most, to harmless error. There was sufficient medical evidence in the existing record for the ALJ to make an informed decision, and Plaintiff has alleged no facts demonstrating clear prejudice. As in *Bellew*, Plaintiff never contends the additional records provide evidence establishing that her impairments meet or equal listing-level severity. In her initial brief, Plaintiff alleged only that the ALJ did not have a full record to consider. Doc. 17 at 8. In her reply brief, Plaintiff contends that prejudice arises from the absence of previously submitted evidence and that the Southern Clinic records support Plaintiff's credibility regarding her subjective experiences. Doc. 22 at 3. These contentions fail to demonstrate clear prejudice in light of what the record already contained, as the Southern Clinic records provide little additional evidence for consideration.

Although Plaintiff contends that these records would bolster her credibility by supporting her testimony and complaints as well as reflect that she had sought treatment that was ineffective in alleviating her symptoms, the inclusion of the Southern Clinic records does not provide clinical, diagnostic, or objective findings demonstrating additional functional limitations. Rather, the Southern Clinic records show that Dr. Gibson's only abnormal findings were obesity and mild to moderate sleep apnea. Doc. 17-1 at 8, 13, 15–18, 20, 23, 27, 29–31, 35, 38, 43. Like *Bellew*, the record in this case already

contains significant evidence of Plaintiff's subjective experiences and complaints, including records from February 2016 to April 2018, well beyond the twelve-month period prior to the application. The record also already contains the Southeast Alabama Medical Center records in which Dr. Gibson treated Plaintiff from January 15 through April 27, 2016, as well as the CNC Neurology records from April 4 through May 25, 2016, which provide records of Plaintiff's test results and treatment overlapping the period covered by the absent Southern Clinic records. R. 302–353. The inclusion of these records provides ample evidence of the early history of Plaintiff's treatment.

Further, despite Plaintiff's contention that the Southern Clinic records justify her rehab no-show the ALJ used to discredit Plaintiff, these records instead reflect that, after undergoing a single round of Epley's maneuver at vestibular rehab, Plaintiff did not return because she experienced no impact. Doc. 17-1 at 21. These records contain no discussion with the care provider regarding Plaintiff's decision to discontinue rehab—it only displays Plaintiff's subjective experience and subsequent choice. Therefore, because there was substantial medical evidence in the existing record to allow the ALJ to make an informed decision without the gap evidence, Plaintiff has not shown that the ALJ's alleged failure to develop the record resulted in unfairness or clear prejudice. Accordingly, remand is not warranted on this issue.

### B.    Conflict with The Vocational Expert's Testimony

Plaintiff's second argument is that the ALJ failed to identify and resolve an apparent conflict between the testimony of the VE and the information in the *Dictionary of Occupational Titles* ("DOT") during Step Four of the sequential evaluation. The VE

testified at the hearing, in response to a hypothetical question that included functional limitations consistent with Plaintiff's RFC, that the job of a retail sales clerk would be available to an individual with Plaintiff's limitations. R. 143. The DOT lists the job of a retail sales clerk as requiring the ability to "constantly" reach, handle, and finger. DOT § 211.462-014. The ALJ found that Plaintiff is limited to "frequently" "reaching, handling, fingering, and feeling." R. 100. The ALJ then found that Plaintiff could return to her past work as a retail sales clerk based on the VE's testimony. R. 104. Plaintiff contends that the ALJ failed to comply with an affirmative obligation to identify and resolve the apparent conflict between the VE's testimony and the DOT listing regarding whether a retail sales clerk must "constantly" or "frequently" reach, handle, finger, and feel. Doc. 17 at 10. Plaintiff argues that this failure requires remand. *Id.* Notably, however, Plaintiff does not contest the ALJ's Step Five finding that there are other jobs existing in significant numbers in the national economy that Plaintiff can perform.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). SSR 00-4p explains that, before relying on VE testimony, ALJs must address any conflicts "between occupational evidence provided by VEs . . . and information in the [DOT] . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p (2000). In *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018), the Eleventh Circuit concluded that, pursuant to SSR 00-4p and the overall regulatory scheme governing disability claims:

> ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them. This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT. Once the conflict has been identified, the Ruling requires the ALJ to offer a reasonable explanation for the discrepancy, and detail in his decision how he has resolved the conflict. The failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence.

906 F.3d at 1356. In that case, the Eleventh Circuit concluded that the ALJ failed to comply with its SSR 00-4p duty because it did not notice or resolve a "glaring conflict" between the VE's testimony and the DOT. *Id.* at 1366. It ruled that the ALJ erred in that respect because, in failing to address the conflict, there was no record upon which to conclude that the ALJ adequately resolved the conflict. *Id.* Accordingly, the panel reversed and remanded for further development of the record. *Id.* at 1366–67.

In the present case, Plaintiff is correct that the VE's testimony that a hypothetical person with Plaintiff's limitations could perform work as a retail sales clerk conflicted with the DOT description of that job. Plaintiff is also correct that the ALJ failed to explicitly address or resolve this conflict in her decision. However, here, unlike in *Washington*, the ALJ's failure to explicitly address and resolve this conflict was harmless because the ALJ subsequently asked the VE a follow-up hypothetical question regarding whether an individual with Plaintiff's limitations, which included frequent instead of constant hand movements, could perform other work in the national economy. R. 143. In response, the VE testified that an individual with those limitations could perform the work of production assembler, cafeteria attendant, and garment bagger and that more than 490,000 of these positions exist in the national economy. R. 143–44. Thus, the ALJ remedied any Step Four

error by pursuing a second hypothetical and obtaining substantial evidence, in the form of VE testimony, for her Step Five finding. *See Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 765–66 (11th Cir. 2019); *Bristol v. Colvin*, No. 1:11cv959, 2013 WL 2147476, at *3 (M.D. Ala. May 15, 2013) ("[T]he ALJ did error at Step 4, in that he determined that Plaintiff's RFC would limit her to unskilled light work . . . and then determined that Plaintiff could perform past work as a cashier [which is semi-skilled work]. However, the error is harmless because the ALJ went on to Step 5 and identified light, unskilled jobs within the national economy that Plaintiff could perform.") (citing *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (finding harmless error where ALJ considered limitations at later stages of analysis)).

As noted above, Plaintiff does not contest the ALJ's Step Five finding regarding Plaintiff's ability to perform other jobs in the national economy. Therefore, while the ALJ may have erred at Step Four, this error was rendered harmless when the ALJ identified other jobs in the national economy consistent with Plaintiff's RFC that Plaintiff can perform. Accordingly, remand is not warranted on this issue.

## C.    The ALJ's Step Two Analysis

Plaintiff's third contention is that the ALJ held Plaintiff to a higher standard than the law requires for the duration requirement at Step 2 of the sequential evaluation. Plaintiff argues that the ALJ required Plaintiff to show that her impairments had *already* lasted a continuous twelve-month period and did not consider whether these impairments *were expected to* last for a twelve-month period. Doc. 17 at 11. This argument seems to hinge entirely on the ALJ's phrasing of her Step Two findings, which stated: "[Plaintiff's]

conditions did not represent, either singly or in combination, more than a minimal limitation in the ability to perform basic work activities for a continuous period of 12 months. Therefore, they are non-severe." R. 99. This sentence is found at the end of a paragraph in which the ALJ discusses the objective medical evidence of Plaintiff's chronic pain syndrome, sleep apnea, spinal cord disease, memory impairment, vision problems, and tremor. R. 99. In the preceding paragraphs, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, central sensitization syndrome, Sjogren's syndrome, and obesity. R. 98–99.

It is Plaintiff's responsibility to prove that she has a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). An impairment is severe if it significantly affects a claimant's ability to perform work-related activities, irrespective of age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). Work-related activities include physical functions such as standing, walking, lifting, and sitting, as well as capacities for hearing and seeing, use of judgment, and understanding, remembering, and carrying out instructions. *See* 20 C.F.R. § 404.1521(b).

The finding of *any* severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy Step 2 because, once the ALJ proceeds beyond Step 2, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ must make specific and well-articulated findings as to the effect of the combination

of all the claimant's impairments. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). However, a clear statement that the ALJ considered the combined effects of Plaintiff's impairments is adequate. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Here, substantial evidence supports the ALJ's finding that Plaintiff's chronic pain syndrome, sleep apnea, spinal cord disease, memory impairment, vision problems, and tremor were not severe. Specifically, the ALJ discussed the records of Dr. Hassan Kesserwani, Neurology Associates, and Pulmonary Associates, as well as the results of a sleep test and spine imaging, all of which indicate only minimal or mild limitations. R. 99. While Plaintiff contends the results of the ALJ's analysis implicate only the period preceding the hearing, it is clear that the ALJ did not find significant concern in any of Plaintiff's records concerning her chronic pain syndrome, sleep apnea, spinal cord disease, memory impairment, vision problems, or tremor. A *de novo* review of the legal principles guiding the ALJ's decision still requires a review of the resulting decision only to determine whether it is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Upon review here, the Court finds that, regardless of how the ALJ phrased her findings, she applied the correct legal standard. She determined that Plaintiff's conditions did not and do not inhibit her ability to perform basic work activities for a continuous period of 12 months (in either the past or the future), and substantial evidence supports that determination.

Furthermore, because the ALJ found that Plaintiff had other impairments that were severe at Step 2 of her analysis, she subsequently had to consider Plaintiff's entire medical

condition, including non-severe impairments, in the following steps. *Jamison*, 814 F.2d at 588. The ALJ stated that she considered the combination effect of Plaintiff's impairments in each of her Step Three and Four analyses. R. 100–101. Therefore, any error in the ALJ's determination of Plaintiff's chronic pain syndrome, sleep apnea, spinal cord disease, memory impairment, vision problems, and tremor was harmless. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded [plaintiff's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process.") (citation omitted).

Additionally, in her initial brief, Plaintiff neither argues nor provides evidence that her chronic pain syndrome, sleep apnea, spinal cord disease, memory impairment, vision problems, or tremor has lasted or could be expected to last at least 12 months or is severe. *See generally* Doc. 17. This absence undermines Plaintiff's argument that she has a severe impairment, a responsibility she carries. *Bowen*, 482 U.S. at 146 n.5. Plaintiff attempts to partially remedy this void in her reply brief by pointing to the potential severity of her sleep apnea.[3] Doc. 22 at 4, 6. However, the sleep study Plaintiff cites for her SaO2 levels resulted in a diagnosis of mild to moderate obstructive sleep apnea that only mildly decreased Plaintiff's sleep efficiency. R. 552. This diagnosis serves as additional substantial evidence

---

[3] Plaintiff asserts that the ALJ erred in failing to consider listing 3.02(C)(3) regarding Plaintiff's SaO2 levels. Doc. 22 at 6. While that listing does allow for consideration of sleep-related breathing disorder complications, listing 3.02(C)(3) requires numerous other findings that Plaintiff fails to address in her briefing. *See* 20 C.F.R Part 404, Subpart P, Appendix 1, Sec. 3.02(C)(3). By not addressing the numerous other elements of listing 3.02(C)(3), Plaintiff has failed to make an argument that her condition meets or equals the full criteria of the listing. *See Teresa S. v. Saul*, No. 1:20cv3053, 2021 U.S. Dist. LEXIS 74968, at *26, n.1 (E.D. Wash. Apr. 19, 2021).

supporting the ALJ's finding. Therefore, because the ALJ properly considered all of Plaintiff's conditions in subsequent steps of her analysis despite finding certain conditions were not severe, and because Plaintiff failed to prove or even argue that these conditions were severe, remand is not warranted on this issue.

### D.   The ALJ's Evaluation of Plaintiff's Testimony of Pain

Finally, Plaintiff argues that the ALJ applied improper selectivity when considering the evidence and failed to provide explicit reasons for this selectivity. Specifically, Plaintiff argues the ALJ erred as a matter of law in her Step Four and Five analyses by finding that Plaintiff's statements were not consistent with the medical evidence and other evidence in the record. Doc. 17 at 12. Plaintiff argues that this finding is not supported by substantial evidence and that the ALJ did not give Plaintiff's testimony of pain proper consideration. *Id.* at 13–14.

To establish a disability based on testimony of pain and other symptoms, Plaintiff must demonstrate: (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence confirming the severity of the alleged pain or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. § 404.1529(a). Once the ALJ identifies an underlying impairment that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which they affect the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1).

Whether a medical condition can reasonably be expected to give rise to the pain allegations is a question of fact subject to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). It is within the province of the ALJ to evaluate a Plaintiff's subjective complaint of symptoms. *Id.* at 1562. Importantly, an ALJ is not required to accept a claimant's subjective allegations of pain or symptoms. *Wilson*, 284 F.3d at 1225–26. If the ALJ rejects a claimant's testimony concerning pain or other symptoms, the ALJ must "articulate explicit and adequate reasons" for discrediting the allegations. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In this case, the ALJ's decision demonstrates that she properly applied the correct pain standard, and substantial evidence supports her decision. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence of record, and the ALJ provided specific reasons in support of this finding. R. 101–04. Specifically, the ALJ found that a plethora of diagnostic testing did not support Plaintiff's complaints

of disabling symptoms. R. 104. MRIs of Plaintiff's brain, thoracic spine, and cervical spine from April 2016, the month she alleges she became disabled, found nothing abnormal. R. 101, 304, 308. A February 2016 CT scan of Plaintiff's head was unremarkable, as was a second CT scan from August 2016, although the second scan showed a partially empty sella and question of prominence of the optic nerve sheaths. R. 101–02, 325, 360–61. An autonomic reflex test and EMG in November 2016 found nothing abnormal. R. 102, 375–80. X-rays of Plaintiff's lumbar spine from November 2016 showed mild multilevel disc spacing, slight retrolisthesis, and lower lumbar facet arthrosis. R. 102, 381. A nerve conduction study in November 2016 found nothing abnormal. R. 379–80. In August 2017, another nerve conduction study, MRI of the brain, and autonomic reflex testing were all normal. R 102, 402.

The ALJ also considered the physical examination findings by Plaintiff's doctors. R. 101–04. Plaintiff sought treatment at CNC Neurology in April 2016 for dizziness, numbness, and unsteadiness. R. 345. Dr. Kesserwani found no abnormalities as to Plaintiff's cranial nerves, her gait was ataxic and unsteady, she had minimal postural tremor at most, her motor strength was 5/5, and her sensation was intact. R. 345. A physical examination by Dr. Han at UAB Medicine in August 2016 for Plaintiff's complaints of vertigo and gait difficulty found Plaintiff was not in acute distress, had normal range of motion with no musculoskeletal tenderness, had normal sensation, and had a cautious and unsteady gait but no ataxia, normal muscle tone, normal muscle strength throughout, and neurologically intact cranial nerves. R. 357.

Plaintiff's initial November 2016 physical examination by Dr. Villamizar at the Mayo Clinic Jacksonville found she was not in acute distress; she had normal range of motion with multiple tender points; she had normal strength, motor function, gait, and sensation; and she had no focal deficits. R. 373–74. She returned the following day, and, after a comprehensive head and neck examination, Dr. Young reported no abnormal findings. R. 371. In January 2018, Plaintiff was seen at Neurology Associates for complaints of balance, vision, and walking problems, stiffness, and numbness. R. 369. On examination, Dr. Malik found Plaintiff could ambulate independently, her recent and remote memory were intact, her cranial nerves were normal, she had increased muscle tone with normal bulk and strength, her motor strength was 5/5 bilaterally in upper and lower extremities, her coordination was normal with no tremors, her sensation was intact, and her gait and stance were normal. R. 398–99.

The ALJ then noted that Plaintiff's treatment primarily consisted of medication, physical therapy, and a recommendation for an assistive device for ambulation. R. 101–04. The ALJ found that Plaintiff refused an assistive device in the form of a cane for her gait. R. 101, 103, 317, 320. *See Brown v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 865 (11th Cir. 2011) (ALJ properly considered plaintiff's decision not to take prescribed medication when assessing severity of alleged pain). Finally, the ALJ observed that Plaintiff was discharged from physical therapy after she failed to show up for several appointments. R. 104, 313–15, 328–29. *Id.*; *see also Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (gaps in treatment history supported the ALJ's denial of benefits).

Plaintiff contends the ALJ improperly selected evidence on which to rely. Doc. 17 at 13–14. However, the ALJ stated that she considered the entire record in her evaluations of Steps 3–5, and Plaintiff has failed to identify evidence that undermines the ALJ's conclusion. R. 100. Plaintiff's contention that the ALJ stated evidence from Neurology Associates was dated February 2016 when it was actually from 2018 is, at most, harmless error, as the evidence was still from the relevant period—that is, after Plaintiff's alleged disability onset date and before the ALJ issued her decision—and would warrant consideration in the ALJ's analysis. Doc. 17 at 14; R. 391–400. In these records, Plaintiff's subjective complaints fail to outweigh the objective medical evidence that a review of her systems was unremarkable. 20 C.F.R. § 404.1529(c)(4). Further, Plaintiff's contention that the result of the neurological exam was "remarkable for difficulty in balance, muscle ache, vision" is undermined by the rest of the exams returning normal results and the results of other exams regarding Plaintiff's gait. R. 393, 357, 373–74, 420, 402, 398–99. As noted above, where it is clear the ALJ considered the record evidence, the Court will not reweigh that evidence or substitute its judgment for that of the Commissioner. *See Miles*, 84 F.3d at 1400.

Plaintiff next contends that the CT scan of her brain from February 2016, which had no abnormal findings, occurred prior to her alleged onset date in April 2016. Doc. 17 at 14. In comparison, Plaintiff states that a CT scan from August 2016 shows "partially empty sella and question of prominence of the optic nerve sheaths." *Id*. This argument is unavailing because the ALJ's decision indicates she knew the first CT scan was from February 2016, and the ALJ also considered and discussed the August 2016 CT scan. R.

101–02. The ALJ's consideration of the first CT scan was proper despite its occurrence before the onset date. *See* 20 C.F.R. §§ 404.1512, 416.912(a). The ALJ also did not err in her evaluation of the August 2016 CT scan because Dr. Singhal found that the scan was unremarkable despite showing the partially empty sella and question of prominence of the optic nerve sheaths. R. 360–61. This finding serves as substantial evidence in support of the ALJ's determination.

Plaintiff also contends that the ALJ improperly omitted evidence that she had ataxic and unsteady gait in April 2016. Doc. 17 at 14. However, an ALJ does not have a rigid requirement to specifically refer to every piece of evidence in the record. *Dyer*, 395 F.3d at 1211. Here, there was substantial evidence weighing against finding an impairment as to Plaintiff's gait. For instance, Dr. Han's August 2016 examination found a cautious and unsteady gait but no ataxia on physical examination. R. 357. Dr. Villamizar did not record ataxia or any other gait problems after a November 2016 physical examination. R. 373–74. Dr. Villamizar then reported Plaintiff had a normal gait in January 2017. R. 420. In August 2017, Dr. Rubin stated Plaintiff was somewhat hesitant when walking but walked with a normal base. R. 402. Dr. Malik again found Plaintiff had normal gait and stance in a January 2018 physical examination. R. 398–99. The results of each of these examinations are inconsistent with and weigh against Dr. Kesserwani's April 2016 evaluation.

Finally, Plaintiff contests the ALJ's decision regarding inconsistencies between her allegations and the medical evidence with respect to her use of a cane. Doc. 17 at 14–15. However, Plaintiff fails to provide any medical evidence demonstrating that she ever used a cane, and it remains her burden to produce evidence in support of her claim. *See* 20 C.F.R.

§ 416.912(a); *Ellison*, 355 F.3d at 1276. It is the duty of the Commissioner to evaluate not only Plaintiff's subjective complaints, but all the types of evidence included in 20 C.F.R. § 404.1529(c), and then resolve conflicts and inconsistencies in the evidence. Here, there was a sole mention of Plaintiff using a cane for balance (R. 273–74), compared to a sole refusal to use a cane (R. 317) and substantial evidence in the form of diagnostic testing and physical examinations weighing against Plaintiff's alleged gait problems. Accordingly, the ALJ's finding that Plaintiff's subjective complaints of disabling symptoms were not entirely consistent with the other evidence of record was not improper.

Because the ALJ provided explicit and adequate reasons for discrediting Plaintiff's allegations, neither reversal nor remand is warranted as to the ALJ's credibility finding. *See Foote*, 67 F.3d at 1562. Further, because the ALJ applied the correct legal standards, and because there is substantial evidence in support of the RFC as well as the finding that Plaintiff is not entitled to disability benefits, the Court may not reevaluate the evidence or override the ALJ's judgment. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158– 59 (11th Cir. 2004). This is true "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* (citation omitted).

## V.   CONCLUSION

For the reasons set forth above, the Court concludes that the Commissioner's decision is based on the proper legal standards and supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 30th day of July, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE